## Case No. 17,996.

### WOODSON v. FLECK et al.

[Chase, 305; [1] 3 Am. Law T. Rep. U. S. Cts. 97; 9 Am. Law Reg. (N. S.) 435; 2 Leg. Gaz. 230; 2 Abb. U. S. 15.]

Circuit Court, D. Virginia. May, 1870.

DE FACTO GOVERNMENT—MUNICIPAL AUTHORITIES —REMOVAL TO FEDERAL COURTS.

1. The government of Virginia organized at Wheeling. has been recognized by the United States as the rightful government of that state.

2. After all organized resistance to the national authority had ceased in Virginia. that government was established in undisputed exercise of its authority at Richmond. That government was thus established during the year 1865.

3. When the de facto government of Virginia was dispersed by the superior force of the United States, the civil authorities did not necessarily cease at once to exist.

4. They continued in being de facto, charged with the duty of maintaining order until superseded by the regular government.

5. Thus the common council of Harrisonburg. though elected under the de facto government. remained charged with the government of the town, notwithstanding the temporary occupation of the place by the United States forces.

6. It might have been superseded, for the government of the United States was not bound to recognize any authority which originated with the de facto government. But it was not superseded.

7. The mayor and common council. therefore. exercising their authority derived from their

[1] [Reported by Bradley T. Johnson, Esq., and here reprinted by permission.]

election, and not by virtue of a military order, have no right to remove a suit from the state to a federal court, when that suit has been brought for an alleged false imprisonment, and malicious prosecution thereon, charged to have been committed by them in the discharge of their municipal functions.

8. The courts of the United States are not constituted guardians of the public peace under state laws.

9. These matters are left absolutely to the state courts.

10. These courts watch over personal rights and private security so far as these depend on state laws, and individuals who exercise local authority are responsible to them.

The town council of Harrisonburg in Rockingham, county, Virginia, had been elected under the laws of the state at the regular town election during the war, and some time before its termination, the town and county being part of the recognized state of Virginia, and within the Confederate military lines of occupation. After the surrender of the Confederate army under General Lee, on April 9, 1865, the war in fact terminated in Virginia, and in a very short time all resistance to the Federal troops ceased. The town authorities of Harrisonburg, their town having been occupied by a garrison, ceased to meet or discharge any of their duties for a while, the military undertaking the entire police and management of affairs on themselves. On June 16, 1865, however, the post commander at Harrisonburg issued a general order which was published and promulgated to the citizens as general order No. 10, addressed to them and notifying them "that the mayor and council of the corporation last in office upon the resumption of their duties, will be sustained in all their acts consistent with existing laws and proclamations of the government." Upon this the local government reorganized itself and resumed the exercise of its functions; among other things electing as town sergeant one of the defendants. Some time after this a riot broke out which was quelled by the exertions of the mayor and town sergeant, and in the course of their efforts to maintain the public peace they arrested the plaintiff Woodson. It seems that Woodson was asserting, and may be proclaiming, that the mayor and town sergeant had no authority to act as officers; that they were mere usurpers; the government of the town having perished with the state government under which it was elected, and that general order No. 10 could not legally nor constitutionally recall into existence that power which had ceased to be, nor could it create them a new power ab initio. Be that as it may—the powers that be arrested Woodson for inciting to riot or aiding it, and Woodson on examination before a magistrate was discharged. Whereupon he brought his action for malicious prosecution against the mayor, some members of the town council, and the town sergeant. After much contention before the state courts, and several trials and removals from one county to another, the defendants brought the case here on the ground that they were acting by virtue of the authority of general order No. 10, and being sued for acts done under or by virtue of orders of military officers of the United States, they had the right to remove it into this court by virtue of the acts of congress of March 3, 1863 [12 Stat. 756], and May 11, 1866 [14 Stat. 46], and their supplements. The plaintiff appeared in this court, and moved that the cause be remanded to the court whence it came, because it had been improperly removed, this court having no jurisdiction.

W. W. Crump and Mr. Roller, for the motion.

Bradley T. Johnson, opposed.

CHASE, Circuit Justice. This is a motion to remand the cause described in the record to the circuit court of Rockingham county. In considering it we are not at liberty to look at the merits of the controversy between the parties. The only question which we have to examine is that of jurisdiction.

The suit was originally brought in the county court of Rockingham county, in the state of Virginia, by a citizen of the state against other citizens of the state for malicious prosecution, and involved, apparently, no question arising under the constitution and laws of the United States.

It was removed from the state court into this court by an order of the circuit court of Rockingham county, in supposed conformity with the acts of congress providing for such removal of certain suits for acts done in obedience to the orders of the national authorities during the recent war.

We are to inquire whether the suit thus removed is one of those for the removal of which provision has been made by congress. If not, it is clear that we have no jurisdiction of it, and it must be remanded to the court from which it came. The modes of removal were provided by the acts of March 3, 1863 (12 Stat. 756), and May 11, 1866 (14 Stat. 46),—one by transfer before verdict, another by appeal after judgment. It is not necessary here to consider the second. The first, under the act of 1863, was a proceeding by petition of the defendants filed after entering an appearance; or if appearance had been entered prior to the date of the act, then at the next session of the court. Under the act of 1866, the proceeding for removal might be resorted to at any time before the empaneling of a jury to try the cause.

The suits which might be removed in one or the other of these modes, according to the condition of the particular case at the time of the proceeding for removal, are fully described in the two acts already referred to. If the suit now under consideration comes within any description of these acts, it is certainly described by the first section of the act of May 11, 1866. That description includes

suits for any act done during the Rebellion by any officer or person under any order issued by any military officer of the United States holding the command of any district or place within which such act was done by the person or officer for whom the order was intended, or by any other person aiding or assisting him therein. If this description does not sanction the act for which the suit in controversy was brought, it was not, as we think, within the meaning of either act of congress.

What, then, were the facts in relation to these suits?

Two of the defendants were members of the town council of Harrisonburg. The other was the sergeant of the corporation appointed by the council. The members of the council were elected during the war, while Harrisonburg was within the Confederate lines and under the control of the insurgent government of Virginia.

The sergeant of the corporation was elected after all organized resistance to the national authority had ceased in Virginia, and after the state government, which had been organized at Wheeling, and recognized by the United States as the rightful government of Virginia, had been established in undisputed exercise of its authority at Richmond.

This suit was brought by Woodson against certain members of the town council of Harrisonburg, and against the town sergeant, for malicious prosecution. The facts appear to be that he was arrested; that his case was examined with reference to further proceedings; and that he was discharged by the justice of the peace who conducted the examination.

The first question is, whether that arrest under the direction of the town council by the town sergeant was an act done in pursuance of any order of the officer in command of the district? We have been referred to general order No. 10, issued from the post head-quarters on June 16, 1865, by the military officers then commanding the district in which Harrisonburg was situated.

It is to be borne in mind that the members of the common council of Harrisonburg had been elected to that office while the insurgent government of Virginia was in entire control of that portion of the state. When that government was dispersed by the superior force of the United States, the civil authorities did not necessarily cease at once to exist. They continued in being de facto, charged with the duty of maintaining order until superseded by the regular government.

Thus the common council of Harrisonburg remained charged with the government of the town, notwithstanding the temporary occupation of the place by the United States forces.

Doubtless it might have been superseded. The government of the United States was not bound to recognize any authority which originated under the insurgent government. But it was not superseded. On the contrary, an order was issued, addressed to the citizens of Harrisonburg, Virginia, June 16, 1865, by which the citizens were notified "that the mayor and council of the corporation last in office, upon the resumption of their duties, will be sustained in all their acts consistent with existing laws and proclamations of the government."

Upon the promulgation of this order the council which had suspended its meetings, resumed its functions. It appointed a town sergeant, who was duly qualified. Shortly afterwards a riot broke out in the town, and the defendants, especially the mayor and the town sergeant, were very active in quelling the disturbance. We have no means of judging how great or how dangerous the disturbance was. It had no connection with the military occupation, nor any relation to the authority of the United States. It was an ordinary riot, and the mayor and town sergeant busied themselves in suppressing it. In doing so they arrested rightfully or unrightfully Woodson, the plaintiff in this suit.

Now, was that act done in pursuance of the order of the post commander? There was nothing in the order relating to any such matter. It was not addressed to the council. It did not require them to arrest anybody. It did not command them to suppress a riot. It simply declared that the council would be sustained in its legitimate action as the town government. It would be going too far, we think, to regard this arrest as an act done in pursuance of an order of any officer of the United States. On the contrary, it seems to us to have been an act intended, at least, as an ordinary exercise of authority by the town council and town sergeant under the laws of Virginia.

The courts of the United States have nothing to do with such matters. They are not constituted guardians of the public peace under state laws. On the contrary, these matters are left absolutely to the state courts. The state courts watch over personal rights and private security so far as these depend on state laws. Individuals who exercise local authority are responsible to them, and both are responsible to the people of Virginia.

We think, therefore, that this is not a case within the description of the act of congress. We are clearly without jurisdiction of it, and must remand it to the circuit court from whence it came.

A second question has been somewhat discussed, namely: Whether, if the order in question could be regarded as directed to the corporate authorities of Harrisonburg, and the arrest of Woodson as actually made under that order, the arrest so made would warrant the removal of Woodson's suit for

malicious prosecution into the United States court, after the restoration of the state government at Richmond, in the spring of 1865? But the view which we take of the first question in this case makes the present consideration of this point unnecessary.